UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRUCE MARTIN CONSTRUCTION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:10CV205 SNLJ |
| ) | |
| CTB, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Bruce Martin Construction, Inc., brought this breach of warranty action against CTB, Inc. CTB moved for summary judgment (#48), and, after an extended briefing schedule, the matter has been fully briefed. This matter is now ripe for adjudication.

### I. Background

The following facts are undisputed except where indicated. Plaintiff was a Missouri dealer and installer of defendant CTB's Harvest-Time grain bins and grain bin unloading systems. From 2005 to 2008, plaintiff bought 79 systems from defendant and then sold 74 of those systems to its end-user customers. The grain bin unloading system employs a self-propelled power sweep augur, which rotates around the bottom of the grain bin to expel the grain. The system was tested only on corn and chick peas, but it was marketed for use with other "free flowing" grains like rice and soy. Plaintiff sold bins and unloading systems to end-users who would have a grain bin and unloading system installed on their property, fill the grain bin, and then, approximately a year after installation, use the unload system to unload the grain from the bin. In theory, the system obviates the need for a human being to enter the bin to facilitate unloading the grain.

1

The Harvest-Time unloading system came with a warranty. The warranty covers "defects in material or workmanship for one (1) year from and after the date of initial installation by or for the original purchaser." The warranty states that, if a defect is found by the manufacturer within the one-year period, the manufacturer will repair or replace the product free of charge or refund the original purchase price to the original purchaser. In all caps writing, the warranty specifically disclaims "any and all other warranties, including...express and implied warranties as to merchantability, fitness for particular purposes sold and description or quality of the product furnished hereunder."

Plaintiff began receiving complaints from its customers about the unloading system's malfunctions within eight to ten months of the first system's installation. The system was not effectively unloading all of the grain from the bin due to a problem (apparently) with the sweeping mechanism. Thus began several years of dealings between and among the end-users, the plaintiff, and the defendant. Defendant ultimately sold to the end-users items that were intended to fix the problems with the unloading system. Plaintiff also replaced five sweeps for one of its customers with a competitor's product. Plaintiff's claimed damages exceed $600,000, and include its recovery of replacement costs, lost profits, and labor costs incurred in attempting to fix the unloading systems.

Plaintiff's breach of warranty claim is all that remains for adjudication, and defendant seeks summary judgment on that claim.

## II.     Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th

2

Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Nunn v. Noodles & Co.*, 674 F.3d 910, 913-14 (8th Cir. 2012). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

In this diversity action, the Court applies the substantive law of the state in which the district court sits. *Urban Hotel Dev. Co. v. President Dev. Co., L.C.*, 535 F.3d. 874, 877 (8th Cir. 2008); *Roemmich v. Eagle Eye Dev. L.L.C.*, 526 F.3d. 343, 348 (8th Cir. 2008). In the present case, Missouri substantive law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Bath*

3

*Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 561 (court assumes Missouri law controls where both parties relied on Missouri law). The obligation to apply state law extends to the forum state's choice of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Missouri honors choice of law provisions in contracts where application of the selected forum's law is not contrary to a fundamental policy of Missouri. *Kagan v. Master Home Prods., Ltd.*, 193 S.W.3d 401 (Mo. Ct. App. 2006). Here, the parties' contract terms contain an Indiana choice of law clause. Because both Missouri and Indiana have enacted Article 2 of the Uniform Commercial Code pertaining to sales of goods, there is no policy conflict, and a Missouri court would thus enforce the choice of law provision.

### III.   Discussion

The elements for a breach of warranty action are (1) the existence of a warranty, (2) breach of that warranty, (3) causation, and (4) resulting damages. *Peltz Const. Co. v. Dunham*, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982). Here, the element in question is whether there was a breach of the warranty, and the parties agree that although the warranty covers "defects in material or workmanship," it does not cover "design defects."

Plaintiff contends that the Harvest-Time system's problem is with materials, not design. It argues that the materials used to construct the backboard (part of the primary structure of the system's power sweep) and the wheels were not of sufficient quality to allow the power sweep to work. First, plaintiff states that the sheet metal used for the backboard is "too flexible" to function properly. In that regard, defendant supplied an "Enhanced Performance Kit" that plaintiff asserts was an effort to remedy the backboard flexibility. Second, plaintiff contends that the materials used for the wheel were not sufficiently durable. Plaintiff's witnesses testified

4

that the rubber on the wheel "burned off" before the sweep could even make it halfway around the bin.

Defendant does not contest that there were problems with the backboard or with the wheels wearing out. However, defendant argues that, even assuming it selected materials that were ill-suited for their intended uses, the selections constitute design defects, not defects in material or workmanship.

Plaintiff maintains that because the contract does not define "materials," it should be interpreted from the perspective of an ordinary person of average intelligence. *Travelers Indem. Co. v. Summit Corp. of America*, 715 N.E.2d 926, 937 (Ind. Ct. App. 1999). Indiana courts refer to the Webster's Dictionary definition of the words not otherwise defined in a contract. *Id.* The New Lexicon Webster's Dictionary defines "material" as "the stuff from which a thing is made, cloth, data constituting the basis of a more finished composition, ... (pl.) necessary tools, equipment, etc." Plaintiff maintains that the Harvest-Time system's wheel was defective because it wore too quickly, and that, insists plaintiff, clearly falls under the definition of the term "material." Plaintiff also maintains that the backboard flexes and is insufficiently rigid, and that it, too, constitutes a "materials" defect. Plaintiff contends that, at best, the term "material" is ambiguous and should be construed against the drafter. *See Salin Bank & Trust Co. v. Review Bd. of Indiana Dept. of Workforce Dev.*, 698 N.E.2d 1, 5 (Ind. Ct. App. 1998).

Defendant responds that plaintiff's own expert opined that the system's design, as opposed to its material, was the problem. The expert concluded that although "it is likely possible to design a workable sweep auger with a driving wheel positioned" as it is in the Harvest-Time system, "this particular design was not workable. Too much of the sweep auger assembly was supported by elements other than the drive wheel which was too much for the

5

drive wheel to overcome." At his deposition, the expert was asked, "would you characterize [the lack of torsional stability to the backboard] as a design defect?" And he answered, "yes, I would." When asked whether the system's problems "really result from the design of the [Harvest-Time system]," he answered, "yes."

Further, defendant argues that there is no ambiguity with respect to the term "material," as case law has clearly defined what constitutes "material" versus "design." Although there does not appear to be any Indiana law on point, the Sixth Circuit has observed that a "defect in material is a defect in quality," but "[d]esign...involves the overall plan of construction and operation." *Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336, 338-39 (6th Cir. 1958). In *Lombard*, the defendant manufacturer failed to use an appropriate variety of steel "necessary to develop a safety factor high enough so that the machine would withstand the continuous recurring strains and stresses of [its intended use]." *Id.* Another court stated that a design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products*, 754 F.Supp.2d 1145, 1181 (C.D.Cal. 2010) (quoting *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) and barring the plaintiffs' express warranty claim against manufacturer that were based on design defects as opposed to defects in "materials or workmanship"). Further, that court noted that a materials or workmanship defect is "often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line." 754 F. Supp. 2d at 1181 (quoting *McCabe*, 100 Cal. App. 4th at 112)). The Eighth Circuit addressed "manufacturing defects" as opposed to "design defects" in the context of a products liability action by noting that there was "no question [that the manufacturer] did precisely what [it] intended to do with the

6

manufacturing process," but that plaintiff was arguing that the manufacturer "didn't do enough" with respect to a UV coating on the product. That's a design question. Not an error in manufacturing." *Linden v. CNH America, LLC*, 673 F.3d 829, 835 (8th Cir. 2012) (quoting and approving of the district court's analysis).

Plaintiff's circumstances are certainly not enviable. However, plaintiff does not supply any caselaw (nor can this Court find any) supporting their position that the problems they say plague *each and every one* of the 79 Harvest-Time unloading systems they purchased and/or sold constitutes a "material or workmanship" defect as opposed to a design defect. Rather, the courts that have spoken on the matter appear to support the defendant's position: the problems with the sweep's backboard and wheel are matters of design, not "material and workmanship." There is nothing inherently wrong with the backboard or wheel materials --- but, just as the defendant manufacturer in *Lombard Corp.*, the defendant here failed to use the proper material to "withstand the...strains and stresses" of its intended use. 261 F.2d at 338-39. Similarly, there is no question that the Harvest-Time system was "built in accordance with its intended specifications," as described in *In re Toyota Motor Corp.*, 754 F.Supp.2d at 1181, but, ultimately, and as diagnosed by plaintiff's own expert, "the design itself is inherently defective," *id.*

Plaintiff's attempt to recast the design vs. materials defect problem as a contract term ambiguity is simply not supported in light of the caselaw interpreting the matter. Moreover, in addition to plaintiff's failure to provide legal support for its position, plaintiff's attempt to cast the wheel and backboard problems as materials defects is belied by its expert's report. Plaintiff's expert wrote:

> The design of the [defendant's] sweep unit includes components that must support
> the sweep to the bin floor and these components drag on the floor and resist

7

> movement of the sweep by the propelling wheel. There is little torsional stability to the back board to where the wheel located behind the back board can support any significant amount of the sweep weight. The supports appear as formed bars extending down in front of the sweep auger and underneath where they rest on the floor. The bins I saw had marks on the floor from this support and drag and even areas where the bin floor was end down from this sweep weight. The face surface of the wheel drive gearbox located at the end of the sweep auger must be pushed into the grain as the sweep auger attempts to move. The gearbox was mounted very close to the bin floor and either rested on the floor or rested on grain trapped under the gearbox further restricting movement. The drive wheel itself does not appear to include a durable material suitable for this kind of application. Early wear out has been reported by customers. I observed dark colored residue left by the rotating wheel.

Plaintiff's expert opines that "an optional EP kit that consists of a rectangular torsion tube that attaches to the backboard of the sweep" is a "step in the right direction and should be included in a more comprehensive redesign of the machine." The expert recommends other improvements to the "design of the structure" in his report and describes the "design features of power sweeps made by other manufacturers that allow their units to function." The expert concludes with "[w]hile it is likely possible to design a workable sweep auger with a driving wheel positioned behind the sweep, as in the [defendant's] design, this particular design was not workable. Too much of the sweep auger assembly was supported by elements other than the drive wheel which was too much for the drive wheel to overcome."

In addition, at his deposition, plaintiff's expert was asked, "would you characterize [the lack of torsional stability to the backboard] as a design defect?" And he answered, "yes, I would." When asked whether the system's problems "really result from the design of the [Harvest-Time system]," he answered, "yes."

In short, plaintiff's argument that the wheel and backboard problems constitute "materials" defects is utterly unsupported by its own expert. Plaintiff's expert opinion focuses entirely and explicitly on the system's design defects. As the nonmoving party, plaintiff is

8

entitled to resolution of any conflicts of evidence in its favor, *Robert Johnson Grain Co.*, 541 F.2d at 210, but the Court cannot accept plaintiff's attempt to rewrite its own expert's report. Plaintiff's attempt to recast the design defects exposed by its expert as materials defects fails, and summary judgment must be granted to the defendant.

### IV.   Conclusion

The parties agree that the Harvest-Time system warranty covers defects in materials or workmanship, not design defects. Plaintiff's own expert opined that the system's defects are inherent to the system's design --- they are not materials defects. As a result, summary judgment will be granted to the defendant on plaintiff's sole remaining claim of breach of express warranty.

Dated this __12th__ day of December, 2012.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE